## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **LUCYANNE OKWOMI** | ) | Case No.:    2:26-cv-2083 |
| Plaintiff, | ) | |
| vs. | ) | **REQUEST FOR JURY TRIAL** |
| | ) | |
| **KANSAS DEPARTMENT FOR AGING** | ) | **DESIGNATION OF PLACE** |
| **AND DISABILITY SERVICES** | ) | **OF TRIAL** |
| **(OSAWATOMIE STATE HOSPITAL)** | ) | |
| | ) | |
| SERVE:    Osawatomie State Hospital | ) | |
| Attn: Superintendent Ashley Byram | ) | |
| 500 State Hospital Drive | ) | |
| Osawatomie, Kansas 66064 | ) | |
| | ) | |
| SERVE:    Kansas Department for Aging and | ) | |
| Disability Services | ) | |
| Attn: Secretary Laura Howard | ) | |
| 503 South Kansas Avenue | ) | |
| Topeka, Kansas 66603-3404 | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED
## COMPLAINT AND DEMAND FOR JURY TRIAL
## AND DESIGNATION OF PLACE OF TRIAL

COMES NOW, Plaintiff Lucyanne Okwomi ("Okwomi"or "Plaintiff") and, by and through undersigned counsel, files the following Complaint against Defendant Kansas Department for Aging and Disability Services (Osawatomie State Hospital), states and alleges as follows:

### I.    INTRODUCTION

1.    This case arises from a pattern of racial hostility, harassment, and blatant retaliation at Osawatomie State Hospital ("OSH").

2.    Plaintiff Lucyanne Okwomi, a Black African nurse practitioner and devout Christian, sought to perform her duties in a safe and professional environment.

3.    In addition to racial hostility, Plaintiff was subjected to unwelcome sexual harassment. Her coworker made inappropriate comments about a "work husband", engaged in unwelcome

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 1 of 23

physical touching, and pressured Plaintiff to enter her private bedroom in the isolated on-call cottage during overnight shifts.

4.    Instead, she was subjected to a campaign of harassment by a white coworker, Jennifer C., who not only made unwanted sexual advances but also deployed vile racial epithets, explicitly referring to Plaintiff as a "black monkey".

5.    Despite Plaintiff's repeated and documented pleas for help to Human Resources and hospital leadership, Defendant Kansas Department for Aging and Disability Services failed to protect her.

6.    Instead of protecting Plaintiff, Defendant ignored her written warnings that the environment had become "discriminatory" and "hostile".

7.    Rather than disciplining the harasser, Defendant turned its investigative machinery against the victim.

8.    In a shocking display of retaliation, only hours after Plaintiff submitted a detailed written report of the abuse on March 4, 2025, Defendant placed her on administrative leave.

9.    Defendant then subjected Plaintiff to a pretextual investigation based on frivolous and discriminatory allegations, including interrogating her for "praying" while on duty and using "perfume oil".

10.    When these frivolous investigations failed to produce a valid reason for termination, Defendant's management admitted in administrative filings that they drafted a "Letter of Reprimand" against Plaintiff for a minor driving infraction, while simultaneously ignoring the violent and racist behavior of her white accuser.

11.    When these tactics failed to force her resignation, Defendant degraded her working conditions by stripping her of necessary sleeping quarters for overnight shifts, while allowing her harasser to remain in them.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 2 of 23

12.    Ultimately, Defendant terminated Plaintiff's employment contract "without cause" via a letter dated April 29, 2025, ordered her to return her equipment, and removed her from the schedule.

13.    Defendant falsely alleges that Plaintiff "chose never to return to work." In reality, Defendant terminated Plaintiff's employment contract "without cause" via a letter dated April 29, 2025, ordered her to return her equipment, and removed her from the schedule.

14.    Yet, in a final act of malice, Defendant re-characterized her compliance with their termination order as a "voluntary resignation without notice," thereby blacklisting her from all future employment with the State of Kansas.

15.    This action seeks to hold Defendant accountable for these egregious violations of Title VII of the Civil Rights Act of 1964 and to vindicate Plaintiff's fundamental right to a workplace free from discrimination and retaliation.

## II.    NATURE OF THE ACTION

16.    This is a civil action seeking redress for discrimination in employment based on race (black), Ethnicity (African), Religion (Christian), Sex (female) and in retaliation for reporting harassing conduct in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq. ("Title VII").

17.    Plaintiff was subjected to a hostile work environment involving racial slurs, including being called a "black monkey."

18.    Plaintiff was subjected to racial harassment and physical intimidation by a white coworker.

19.    Plaintiff was subjected to sexual harassment by a coworker who made unwelcome sexual advances and inappropriate comments about relationships.

20.    Defendant failed to take effective remedial action after Plaintiff reported this harassment.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 3 of 23

21.    Defendant retaliated against Plaintiff by placing her on administrative leave immediately following her protected complaints.

22.    Defendant allowed the harassment to escalate into retaliatory harassment after Plaintiff complained, including permitting the harasser to sabotage Plaintiff's medical charts and stalk her.

23.    Defendant subjected Plaintiff to pretextual disciplinary investigations for "praying" and using "perfume oil."

24.    Defendant materially altered Plaintiff's working conditions by removing her from sleeping quarters essential for her overnight shifts.

25.    Defendant terminated Plaintiff's employment contract early under the guise of a "resignation not in good standing".

26.    Defendant terminated Plaintiff's employment contract early "without reason" and then falsely classified it as a resignation to destroy her career prospects with the State.

### III.    PARTIES

27.    Plaintiff Lucyanne Okwomi is an adult female resident of Overland Park, Kansas.

28.    At all times relevant hereto, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. 2000e(f).

29.    Defendant Kansas Department for Aging and Disability Services ("KDADS") is a state agency.

30.    Defendant operates Osawatomie State Hospital ("OSH"), a mental health facility.

31.    Defendant is located at 500 State Hospital Drive, Osawatomie, Kansas 66064.

32.    Defendant can be served at Kansas Department for Aging and Disability Services Attention Secretary Laura Howard 503 South Kansas Avenue, Topeka, Kansas 66603-3404.

33.    32.    Defendant can be served at Osawatomie State Hospital Attn: Superintendent Ashley Byram 500 State Hospital Drive Osawatomie, KS 66064

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 4 of 23

34.     At all times relevant hereto, Defendant was an "employer" within the meaning of 42 U.S.C. 2000e(b).

## IV.    JURISDICTION AND VENUE

35.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331 (federal question).

36.     This Court has subject matter jurisdiction pursuant to 42 U.S.C. 2000e-5(f)(3).

37.     Venue is proper in the District of Kansas pursuant to 28 U.S.C. 1391(b).

38.     A substantial part of the events giving rise to the claim occurred in this judicial district.

39.     The unlawful employment practices alleged herein were committed within the District of Kansas.

40.     Plaintiff initiated her administrative process on February 1, 2025, under EEOC Inquiry No. 563-2025-01633 (Exhibit "L"), which was later perfected into formal EEOC Charge No. 563-2025-04052 (Exhibit "A").

41.     Plaintiff has exhausted her administrative remedies.

42.     Plaintiff has fully exhausted her administrative remedies regarding her claims of sexual harassment.

43.     The EEOC filled out the charge for Plaintiff.

44.     Although the EEOC did not include "Sex" on the formal Charge of Discrimination (the form did not have any check boxes) due to a clerical error by the EEOC investigator who drafted the form, the Defendant's own Position Statement to the EEOC explicitly acknowledges that it investigated Plaintiff's claims of "Sexual Harassment.

45.     Plaintiff's initial inquiry with the EEOC included "sexual hatred".

46.     Because the scope of the administrative investigation actually included sexual harassment, Defendant was on actual notice of the claim and cannot now assert failure to exhaust.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 5 of 23

47.     Defendant's EEOC Position Statement, Defendant admits it investigated complaints of "Sexual Harassment".

48.     Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 563-2025-04052).

49.     Plaintiff alleged discrimination based on race (black), Ethnicity (African), Religion (Christian), and in retaliation for reporting harassing conduct in her EEOC Charge.

50.     The EEOC issued a Dismissal and Notice of Rights ("Right to Sue") on November 18, 2025.

51.     This Complaint is filed within ninety (90) days of Plaintiff's receipt of said notice.

## V.     STATEMENT OF FACTS

### A.     Documents

52.     A copy of Plaintiff's Charge of Discrimination is attached hereto as **Exhibit "A"**.

53.     A copy of Plaintiff's Right to Sue letter is attached hereto as **Exhibit "B"**.

54.     A true and accurate copy of Plaintiff's "Employment Agreement for Licensed Medical Services" is attached hereto as **Exhibit "C"**.

55.     A true and accurate copy of an email dated February 13, 2025, from Plaintiff to Dr. Merma G. and Ashley B. is attached hereto as **Exhibit "D"**.

56.     A true and accurate copy of an April 29, 2025, letter from Ashley B. to Plaintiff is attached hereto as **Exhibit "E"**.

57.     A true and accurate copy of an email dated February 14, 2025, from Plaintiff to Dr. Merma G., Tyler E. and Ashley B. is attached hereto as **Exhibit "F"**.

58.     A true and accurate copy of a letter dated March 28, 2025, from Ashley B. regarding "Return to Work" is attached hereto as **Exhibit "G"**.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 6 of 23

59.    A true and accurate copy of a Letter to Plaintiff from Ashley B. dated May 9, 2025, is attached hereto as **Exhibit "H"**.

60.    A true and accurate copy of a Letter to Plaintiff fom Assistant Human Resources Director dated May 1, 2025, is attached hereto as **Exhibit "I"**.

61.    A true and accurate copy of an Updated Letter to Plaintiff fom Assistant Human Resources Director dated May 1, 2025, is attached hereto as **Exhibit "J"**.

62.    A true and accurate copy of Defendant's EEOC Position Statement dated September 16, 2025, from Senior Counsel to the EEOC is attached hereto as **Exhibit "K"**.

63.    A true and accurate copy of Inquiry Information submitted on February 1, 2025, is attached hereto as **Exhibit "L"**.

B.    **Plaintiff's Employment and Defendant's Policies**

64.    Plaintiff began her employment with Defendant on or about October 28, 2024.

65.    Plaintiff held the position of Advanced Practice Registered Nurse ("APRN").

66.    Plaintiff specialized in mental health services.

67.    Plaintiff was employed under a written "Employment Agreement for Licensed Medical Services".

68.    The term of Plaintiff's contract was set to expire on June 7, 2025.

69.    Defendant maintains written policies governing employee conduct.

70.    Defendant's Policy 3.1.C (Sexual Harassment) prohibits "sexually-oriented conversations".

71.    Policy 3.1.C prohibits "joking" and "innuendos" of a sexual nature.

72.    Policy 3.1.C prohibits conduct that unreasonably interferes with an individual's work performance.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 7 of 23

73. Defendant's Policy 3.8.E (Workplace Violence) prohibits "threats" and "threatening behavior".

74. Policy 3.8.E prohibits conduct which disrupts another's work performance.

75. Defendant's Policy 3.1.D (Complaints) governs harassment complaints.

76. Policy 3.1.D mandates that the agency will take "immediate action to investigate" complaints.

77. Policy 3.1.D states that an employee reporting harassment "will not be subject to any form of retribution or retaliation".

## C.    Hostile Work Environment

78. Plaintiff worked overnight shifts at Osawatomie State Hospital.

79. Plaintiff worked alongside a white coworker named Jennifer C. ("APRN").

80. Shortly after Plaintiff's employment began, Jennifer C. engaged in unwelcome conduct toward Plaintiff.

81. Jennifer C. subjected Plaintiff to unwelcome sexual harassment.

82. Jennifer C. repeatedly referred to having a "work husband" in Plaintiff's presence.

83. Jennifer C. attempted to summon Plaintiff into her room while they were alone in the cottage at night.

84. Jennifer C. placed her hand on Plaintiff's shoulder without consent.

85. Jennifer C. pressured Plaintiff to come to Jennifer C.'s room in the on-call cottage.

86. The on-call cottage is a shared residential space for staff working overnight shifts.

87. Jennifer C.'s conduct escalated to racial hostility.

88. On at least one occasion, Jennifer C. referred to Plaintiff as a "black monkey".

89. Jennifer C. mocked Plaintiff's accent.

90. Jennifer C. stayed overnight in the on-call cottage even when she was not on duty.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 8 of 23

91.    Jennifer C. used her presence in the cottage to monitor Plaintiff.

92.    Jennifer C. used her presence in the cottage to intimidate Plaintiff.

93.    Plaintiff documented Jennifer C.'s threatening behaviors in contemporaneous notes.

94.    Plaintiff documented that Jennifer C. "blocked me from door" during a confrontation.

95.    Plaintiff documented that Jennifer C. "yelled" at her.

96.    Plaintiff documented that Jennifer C. "followed me to the bathroom".

97.    Plaintiff feared for her physical safety around Jennifer C.

98.    Plaintiff noted in her records regarding Jennifer C., "lucky she didn't have a gun".

**D.    Plaintiff's Protected Activity**

99.    On January 24, 2025, Plaintiff met with her supervisor, Dr. Merma G.

100.    The purpose of the meeting was to address the conflict with Jennifer C.

101.    Defendant's management characterized the harassment as a "personality conflict".

102.    Defendant's management focused on trivial issues such as "talking over staff".

103.    Defendant's management failed to address the sexual nature of Jennifer C.'s conduct.

104.    On February 1, 2025, Plaintiff emailed HR Director Tyler E.

105.    C.". Plaintiff explicitly reported "sexual harassment" in her written complaints to management.

106.    In her February 1, 2025 email to HR Director Tyler England, Plaintiff wrote that she was reporting "continued harassment/sexual harassment from Jennifer C."

107.    On February 3, 2025, Plaintiff met with Tyler E. and Superintendent Ashley B.

108.    Plaintiff formally reported the harassment during this meeting.

109.    On February 13, 2025, Plaintiff sent an email to Dr. Merma G. and Ashley B.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 9 of 23

110. Plaintiff explicitly reported retaliatory harassment and sabotage of her medical duties, "Also and I reported this to Lissa this morning, Jennifer is going on the book that we write shift report and scratching off part of my report for my shift."

111. On February 14, 2025, Plaintiff sent another email to Dr. Merma G., Ashley B., and Tyler E., pleading for intervention and putting them on notice of he legal nature of her claims.

112. Plaintiff wrote, "Something needs to be done this is discriminatory and creating a very hostile and offensive work environment and this behavior is still going on."

113. Plaintiff stated that "harassment from Jennifer still continues".

114. Plaintiff stated that the environment was "discriminatory".

115. Plaintiff stated that the environment was "hostile and offensive".

116. Defendant did not remove Jennifer C. from the cottage.

117. Defendant did not discipline Jennifer C. for violating the Sexual Harassment policy.

118. Defendant did not discipline Jennifer C. for violating the Workplace Violence policy.

**E.    Retaliation and Pretextual Investigation**

119. On March 4, 2025, at approximately 2:20 PM, Plaintiff sent an email to HR Investigator Michael P.

120. Plaintiff's email copied Superintendent Ashley B.

121. Plaintiff identified Dr. Scott M. as an eyewitness to Jennifer C.'s yelling on March 1, 2025.

122. Plaintiff detailed Jennifer C.'s physical intimidation in this email.

123. Less than 24 hours later, on March 4, 2025, Defendant placed Plaintiff on Administrative Leave.

124. Defendant initiated an investigation against Plaintiff.

125. Defendant alleged Plaintiff engaged in reckless driving.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 10 of 23

126.    Defendant alleged Plaintiff improperly used perfume oil.

127.    Defendant alleged Plaintiff committed an infraction by praying.

128.    Plaintiff is a devout Christian.

129.    Defendant cited Plaintiff's prayer as a disciplinary issue.

130.    The investigation concluded with no finding of wrongdoing by Plaintiff regarding the driving allegations.

131.    Upon information and belief, Jennifer C. was not investigated for her policy violations.

132.    Upon information and belief, Defendant prepared a "Letter of Reprimand" against Plaintiff regarding the driving allegation to paper her file with negative citations, while ignoring the documented violence and racial slurs committed by Jennifer C.

133.    Plaintiff documented this disparity in discipline in her notes.

134.    Plaintiff wrote "Whites Only?" in her notes regarding Defendant's disciplinary practices.

**F.    Adverse Employment Actions and Termination**

135.    On March 28, 2025, Defendant issued a letter reinstating Plaintiff to work.

136.    This letter was signed by Superintendent Ashley B.

137.    The letter ordered Plaintiff to surrender her key to the on-call cottage.

138.    The on-call cottage contained sleeping quarters necessary for overnight shifts.

139.    The letter ordered Plaintiff to work from a "conference room" instead.

140.    Jennifer C. was permitted to remain in the on-call cottage.

141.    Defendant has falsely alleged in its administrative position statements that Plaintiff "chose never to return to work" or abandoned her position. This allegation is false.

142.    Plaintiff was removed from the schedule, stripped of her cottage access, and subsequently fired by Defendant via written letter.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 11 of 23

143.    In early April 2025, Plaintiff contracted COVID-19.

144.    Plaintiff communicated her illness to Dr. Merma G.

145.    Plaintiff communicated her illness to Lissa B. in the Medical Staff Office.

146.    On April 15, 2025, Dr. Merma G. emailed Plaintiff.

147.    Dr. Merma G. wrote, "I hope you will feel better soon".

148.    Defendant treated Plaintiff as an active employee as of April 15, 2025.

149.    On April 29, 2025, Defendant issued a termination letter to Plaintiff.

150.    The letter stated Plaintiff's contract would terminate effective May 29, 2025.

151.    Defendant cited a 30-day notice provision for the termination.

152.    This termination occurred less than two (2) months after Plaintiff's protected March 4, 2025 complaint.

153.    On April 29, 2025, Defendant issued a formal termination letter to Plaintiff signed by Superintendent Ashley B.

154.    The letter stated that KDADS was "expressing its right to terminate the Employment Agreement… without reason or penalty" effective May 29, 2025.

155.    The letter explicitly admitted there was no "cause" for termination.

156.    The letter commanded Plaintiff: "Please return any and all KDADS items in your possession."

157.    It was impossible for Plaintiff to continue working as she had been removed from the schedule and ordered to surrender the equipment necessary to perform her job.

158.    The letter stated that KDADS was "expressing its right to terminate the Employment Agreement… without reason or penalty" effective May 29, 2025.

159.    The letter explicitly admitted there was no "cause" for termination.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 12 of 23

160.	The letter commanded Plaintiff: "Please return any and all KDADS items in your possession."

161.	It was impossible for Plaintiff to continue working as she had been removed from the schedule and ordered to surrender the equipment necessary to perform her job.

162.	On May 9, 2025, in direct compliance with the April 29th termination letter, as requested by OSH, Plaintiff returned her state-issued keys and equipment.

163.	Plaintiff required a security escort to retrieve her personal items from the cottage.

164.	Plaintiff required security due to her credible fear of violence from Jennifer C.

165.	While Plaintiff was retrieving her personal belongings with the security escort, Jennifer C. physically attempted to attack Plaintiff.

166.	The security officer was forced to physically intervene and place her body between Plaintiff and Jennifer C. to prevent the assault.

167.	During this attack, Jennifer C. screamed at Plaintiff that she "was fired," further confirming that the hostile environment continued until the very last moment of Plaintiff's presence on campus.

168.	Plaintiff was terrified for her safety and left the premises immediately after retrieving her minimal belongings (a blanket, perfume, and soap).

169.	Despite having already terminated her via the April 29th letter, Defendant subsequently and falsely characterized Plaintiff's return of keys as a "Resignation Not in Good Standing" because she supposedly failed to give two weeks' notice.

170.	Plaintiff did not resign.

171.	Plaintiff was fired without reason and ordered to return her property.

172.	Defendant utilized this false "Resignation" narrative to blacklist Plaintiff.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 13 of 23

173.    Plaintiff was told that because she had allegedly resigned and did not give two (2) weeks' notice she was "barred" from working with the State of Kansas ever again.

174.    Defendant characterized Plaintiff's return of keys as requested a "resignation not in good standing".

175.    Plaintiff was never put on the schedule after April 29, 2025.

176.    Plaintiff did not voluntarily resign.

177.    Plaintiff was constructively discharged.

178.    Plaintiff was told that because she had allegedly resigned and did not give two (2) weeks' notice she was not eligible for hire in any State of Kansas facilities.

179.    As a direct and proximate result of Defendant's retaliatory Resignation Not in Good Standing designation (Blacklisting), Plaintiff has been effectively barred from comparable government employment.

180.    Plaintiff has been forced to accept a position with significantly lower wages and less favorable terms (weekend shifts paid by unit), resulting in substantial ongoing economic loss.

## COUNT I
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964

181.    Plaintiff incorporates the preceding and foregoing paragraphs as if fully set forth herein.

182.    Plaintiff engaged in protected activity by reporting sexual harassment.

183.    Plaintiff engaged in protected activity by reporting racial harassment.

184.    Plaintiff reported this harassment to Defendant's management and Human Resources.

185.    Defendant took adverse employment actions against Plaintiff.

186.    Defendant placed Plaintiff on administrative leave on March 4, 2025.

187.    This suspension occurred mere hours after Plaintiff's written complaint.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 14 of 23

188.    Defendant subjected Plaintiff to a pretextual investigation for praying.

189.    Jennifer C. made retaliatory complaints against Plaintiff.

190.    Defendant investigated Plaintiff for retaliatory complaints made by Jennifer C.

191.    Defendant ignored Plaintiff's complaints about Jennifer C.

192.    Defendant subjected Plaintiff to a pretextual investigation for perfume.

193.    Defendant prepared a pretextual Letter of Reprimand to paper Plaintiff's file with negative citations.

194.    Defendant revoked Plaintiff's access to the on-call cottage sleeping quarters.

195.    Defendant allowed the harasser to remain in the on-call cottage.

196.    Defendant terminated Plaintiff's employment contract on April 29, 2025.

197.    Defendant falsely classified Plaintiff's departure as a resignation to render her ineligible for rehire with the State.

198.    A causal connection exists between Plaintiff's protected activity and these adverse actions.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A.    For a declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964.

B.    For a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates or retaliates against Plaintiff or any other employee on the basis of protected activity.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 15 of 23

C.     For an order directing Defendant to expunge any negative references or disciplinary records in Plaintiff's personnel file resulting from the retaliatory investigations and termination.

D.     For an order directing Defendant to amend Plaintiff's Employment Record to reflect that she is eligible for rehire.

E.     For an award of back pay, including all lost wages, salary, and benefits, in an amount to be determined at trial.

F.     For an award of front pay or, in the alternative, reinstatement to her position.

G.     For an award of compensatory damages for past and future mental anguish, emotional distress, pain and suffering, humiliation, and loss of enjoyment of life.

H.     For an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. 2000e-5(k).

I.     For pre-judgment and post-judgment interest as provided by law.

J.     For such other and further relief as the Court deems just and proper.

### COUNT II
### Retaliatory Hostile Work Environment in Violation of Title VII

199. Plaintiff incorporates the preceding and foregoing paragraphs as if fully set forth herein.

200. Plaintiff engaged in protected activity by repeatedly reporting the harassment she was suffering.

201. Following her reports, the harassment by her coworker Jennifer C. did not stop; instead, it escalated into retaliatory harassment.

202. This retaliatory harassment included sabotaging Plaintiff's medical entries by "scratching off" her reports in the logbook.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 16 of 23

203. This retaliatory harassment included stalking Plaintiff and making false accusations against her to management.

204. Defendant knew of this retaliatory harassment, as Plaintiff explicitly reported in her February 13, 2025, and February 14, 2025, emails that the behavior "still continues" and was "discriminatory."

205. Defendant failed to take prompt and effective remedial action to stop the retaliatory harassment, effectively condoning the retribution.

206. This environment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A. For a declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964.

B. For a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates or retaliates against Plaintiff or any other employee on the basis of protected activity.

C. For an order directing Defendant to expunge any negative references or disciplinary records in Plaintiff's personnel file resulting from the retaliatory investigations and termination.

D. For an order directing Defendant to amend Plaintiff's Employment Record to reflect that she is eligible for rehire.

E. For an award of back pay, including all lost wages, salary, and benefits, in an amount to be determined at trial.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 17 of 23

F.      For an award of front pay or, in the alternative, reinstatement to her position.

G.      For an award of compensatory damages for past and future mental anguish, emotional

distress, pain and suffering, humiliation, and loss of enjoyment of life.

H.      For an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. 2000e-5(k).

I.      For pre-judgment and post-judgment interest as provided by law.

J.      For such other and further relief as the Court deems just and proper.

## COUNT III
### Hostile Work Environment in Violation of Title VII
### (Race, National Origin, and Sex)

207.    Plaintiff incorporates the preceding and foregoing paragraphs as if fully set forth

herein.

208.    Plaintiff is Black.

209.    Plaintiff is African.

210.    Plaintiff was subjected to unwelcome harassment based on her race, national origin,

color and sex.

211.    Plaintiff was subjected to unwelcome harassment based on her sex.

212.    The harassment included unwelcome physical touching and pressure to enter a

coworker's private bedroom.

213.    The sexual harassment was severe or pervasive enough to alter the conditions of

Plaintiff's employment and create an abusive working environment.

214.    Defendant knew of the sexual harassment because Plaintiff explicitly reported "sexual

harassment" in her February 1, 2025 email.

215.    The harassment included the use of the racial slur "black monkey".

216.    The harassment included mocking Plaintiff's accent.

217.    The harassment included disparate discipline compared to white employees.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 18 of 23

218.    The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.

219.    The harassment created an abusive working environment.

220.    Defendant knew of the harassment.

221.    Defendant failed to take prompt and effective remedial action.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A.    For a declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964.

B.    For a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates or retaliates against Plaintiff or any other employee on the basis of protected activity.

C.    For an order directing Defendant to expunge any negative references or disciplinary records in Plaintiff's personnel file resulting from the retaliatory investigations and termination.

D.    For an order directing Defendant to amend Plaintiff's Employment Record to reflect that she is eligible for rehire.

E.    For an award of back pay, including all lost wages, salary, and benefits, in an amount to be determined at trial.

F.    For an award of front pay or, in the alternative, reinstatement to her position.

G.    For an award of compensatory damages for past and future mental anguish, emotional distress, pain and suffering, humiliation, and loss of enjoyment of life.

H.    For an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. 2000e-5(k).

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 19 of 23

I.      For pre-judgment and post-judgment interest as provided by law.

J.      For such other and further relief as the Court deems just and proper.

## COUNT IV
### Religious Discrimination in Violation of Title VII

222.    Plaintiff incorporates the preceding and foregoing paragraphs as if fully set forth herein.

223.    Plaintiff is a Christian.

224.    Defendant cited Plaintiff's praying as a basis for a disciplinary investigation.

225.    Defendant cited Plaintiff's praying as a basis for her suspension on March 4, 2025.

226.    Praying while on duty is a protected religious observance.

227.    Defendant's treatment of this activity as a disciplinary infraction constitutes discrimination based on religion.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A.      For a declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964.

B.      For a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates or retaliates against Plaintiff or any other employee on the basis of protected activity.

C.      For an order directing Defendant to expunge any negative references or disciplinary records in Plaintiff's personnel file resulting from the retaliatory investigations and termination.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 20 of 23

D.      For an order directing Defendant to amend Plaintiff's Employment Record to reflect that she is eligible for rehire.

E.      For an award of back pay, including all lost wages, salary, and benefits, in an amount to be determined at trial.

F.      For an award of front pay or, in the alternative, reinstatement to her position.

G.      For an award of compensatory damages for past and future mental anguish, emotional distress, pain and suffering, humiliation, and loss of enjoyment of life.

H.      For an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. 2000e-5(k).

I.      For pre-judgment and post-judgment interest as provided by law.

J.      For such other and further relief as the Court deems just and proper.

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Lucyanne Okwomi respectfully prays for judgment against Defendant as follows:

A.      For a declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964.

B.      For a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates or retaliates against Plaintiff or any other employee on the basis of protected activity.

C.      For an order directing Defendant to expunge any negative references or disciplinary records in Plaintiff's personnel file resulting from the retaliatory investigations and termination.

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 21 of 23

D.    For an order directing Defendant to amend Plaintiff's Employment Record to reflect that she is eligible for rehire.

E.    For an award of back pay, including all lost wages, salary, and benefits, in an amount to be determined at trial.

F.    For an award of front pay or, in the alternative, reinstatement to her position.

G.    For an award of compensatory damages for past and future mental anguish, emotional distress, pain and suffering, humiliation, and loss of enjoyment of life.

H.    For an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. 2000e-5(k).

I.    For pre-judgment and post-judgment interest as provided by law.

J.    For such other and further relief as the Court deems just and proper.

## VII.    REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial on all claims asserted herein.

## VIII.    DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

Respectfully submitted,

/s/ Aaron C. McKee

Aaron C. McKee            KS # 20889
MCKEE LAW, L.L.C.
222 South Cherry Street
Olathe, Kansas 66061
Phone: (913) 768-6400
Facsimile: (913) 768-6420
aaronmckee@ksmoemploymentlaw.com
**ATTORNEY FOR PLAINTIFF**

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 22 of 23

## VERIFICATION

State of ___K_ansas___ )

County of ___Johnson___ )

I, LUCYANNE OKWOMI, being first duly sworn, deposes and states:

1.      I am the Plaintiff in the above-entitled action.

2.      I have read the foregoing Complaint and Demand for Jury Trial and Designation of Place of Trial.

3.      I have personal knowledge of the facts stated in the Complaint, and the factual allegations asserted therein are true and correct to the best of my knowledge, information, and belief.

4.      I declare under penalty of perjury under the laws of the United States of America and the State of Kansas that the foregoing is true and correct, and I believe the facts and allegations to be true based upon the information available as of the time of signing.

5.      I understand that making a false statement in this affidavit could result in criminal charges for perjury.

01/26/2026
Date

Lucyanne Okwomi
Lucyanne Okwomi

Subscribed and sworn to before me this __26__ day of __January__, 2026.

Notary Public

My Commission Expires: 04/07/2026

RYAN BREWER
Notary Public-State of Kansas
My Appt. Expires April 7, 2026

Verified Complaint and Demand for Jury Trial and Designation of Place of Trial
*Lucyanne Okwomi v. Kansas Department for Aging and Disability Services (Osawatomie State Hospital)*
Page 23 of 23

Exhibit "A"

EEOC No. 563-2025-04052 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 563-2025-04052 |
| Kansas Human Rights Commission | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Lucyanne M. Okwomi

Phone No.: ███████████

Year of Birth: ███

Mailing Address: ████████████████

████████████████

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Osawatomie state hospital

No. Employees, Members: 501+ Employees

Phone No.: (913) 755-7000

Mailing Address: 500 State Hospital Dr

OSAWATOMIE, KS 66064, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

National Origin, Race, Religion, Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01/27/2025

Latest: 05/09/2025

THE PARTICULARS ARE:

I am a black, Christian, African woman. I worked for the above-named respondent on or around October 28, 2024, to on or around May 9, 2025, and held the position of Mental Health Nurse Practitioner.

I was harassed starting on or around January 27, 2025, by a coworker. This coworker would yell at me, call me names, make fun of my accent, and called me "a black monkey." She would follow me around, block me from doing my job, and use other people to help prevent me from working. It was so bad there were times I had to hide in the bathroom. I reported the incidents to HR, the superintendent, and my supervisor many times. I was told it was under investigation, but the harassment did not stop. On or around March 4, 2025, I was put on administrative leave for driving recklessly in the drive, having oil at work, and for praying. I came back from the administrative leave on or around March 28, 2025. On May 1, 2025, I was discharged without any explanation.

I believe I have been discriminated against because of my Race (black), Ethnicity (African), Religion (Christian), and in retaliation for reporting harassing conduct in violation of Title VII of the Civil Rights Act of 1964, as amended.

---

EEOC Form 5 (06/24)                                                                 Page 1 of 3

EEOC No. 563-2025-04052 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

_LUWanne Owoni 8/1/25_

Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_Luwanne Owoni_

Notarized Signature of Charging Party

Subscribed and sworn to before me this date: 08 /01 / 2025

RYAN BREWER
Notary Public-State of Kansas
My Appt. Expires April 7, 202─

Signature of Notary _____

Printed Name _Ryan Brewer_____

Exhibit "B"

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Kansas City Area Office**
400 State Ave, Suite 905
Kansas City, KS 66101
(913) 340-8810
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 11/18/2025

To: Lucyanne M. Okwomi

█████████████████

Charge No: 563-2025-04052

EEOC Representative and email:    ROBERT MEDINA
                                 EQUAL OPPORTUNITY INVESTIGATOR
                                 ROBERT.MEDINA@EEOC.GOV

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 563-2025-04052.

On behalf of the Commission,

Digitally Signed By:David Davis
11/18/2025

David Davis
District Director

**Cc:**
Human  Resources
OSH.HR@ks.gov

Osawatomie state hospital
500 State Hospital Dr
OSAWATOMIE, KS 66064

████████████

Kansas Department for Aging and Disability Services
503 S. Kansas Ave.
Topeka, KS 66603


Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at
https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 563-2025-04052 to the District Director at David Davis, 1222 Spruce St Rm 8 100, St Louis, MO 63103.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 563-2025-04052 to the District Director at David Davis, 1222 Spruce St Rm 8 100, St Louis, MO 63103.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# Exhibit "C"

**EMPLOYMENT AGREEMENT FOR
LICENSED MEDICAL SERVICES**

**(June 09, 2024 - June 07, 2025)**

This Employment Agreement (the "Agreement") is entered into as of the **30th** day of **September, 2024**, by and between the Secretary of the Kansas Department for Aging and Disability Services ("KDADS"), and Lucyanne Okwomi, PMHNP, BC, (the "Employee"), all of whom may hereinafter collectively be referred to as the "Parties".

WHEREAS, pursuant to the provisions of K.S.A. 76-12a03, KDADS is authorized to retain Employees for medical services to be rendered at State Hospitals and Institutions, including, Osawatomie State Hospital (the "Hospital");

WHEREAS, pursuant to the provision of K.S.A. 75-2935(1)(o), Employees appointed to provide services at the various Kansas State Hospitals, including the Hospital, are considered in the unclassified service, and except as made applicable by Executive Order No. 85-84, as such are subject to the rules and regulations otherwise applicable to employees of the State within the unclassified service; and

WHEREAS, KDADS is willing to engage Employee's medical services at the Hospital and Employee is willing to provide such services pursuant to the terms and conditions contained herein.

THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    Employee's Duties. The Employee agrees to provide his/her professional services to the Hospital and for such patients as the Hospital may assign to Employee and to perform such other duties as may be assigned, as set out in the Employee's position description or as directed by Employee's supervisor, and consistent with the following:

    a.    Normal working hours. The Employee agrees to be available for assignment and duties a minimum of 40-hours per week. The Employee further understands and agrees that the Employee will be assigned to duties, including on a rotating basis as the Hospital may assign to the Employee, On-Duty, On-Call, and other responsibilities which may require the Employee to be available for assignment and duties during holidays, weekends, and evenings in excess of 40-hours in any particular one-week period, and up to and including 24 hour/day continuous assignment, without further compensation or benefit; except that the Employee shall be entitled to holiday compensation, in the form of compensatory time off for all hours worked on a legally designated state holiday. The Employee also understands and agrees that appointment to an exempt position in service to state government does not include the payment of overtime.

    b.    By-Laws, Rules, Regulations, and Policies. The Employee agrees to abide by the By-Laws of the Medical Staff of the Hospital, the rules, laws, regulations and policies of the State of Kansas applicable to all public employees, including the

prohibitions provided for within the provisions of the State Governmental Ethics Act, K.S.A. 46-215, et seq., the policies of the Hospital, the rules and regulations of the Board of Healing Arts, and the Principles of Medical Ethics of the American Medical Association and the American Psychiatric Association.

    c.     Outside practice. Unless agreed to in writing by the Hospital and KDADS' Central Office, Employee agrees that he/she will not be employed or contracted to provide professional medical consultations and/or services to any other person, entity or organization whatsoever during the term of this Agreement.

    d.     During the term of this Agreement, Employee shall devote his/her best efforts to the practice and the affairs of the Hospital/KDADS and shall perform in a professional, competent and cooperative manner such duties as KDADS and/or the Hospital may reasonably assign to Employee consistent with Employee's training, experience and expertise.

    2.     Compensation. KDADS agrees to pay the Employee, as compensation for the services to be performed during the term of this Agreement, the sum of approximately **One Hundred Fifty-Six Thousand Dollars & Zero Cents ($156,000.00/year)**, earned and payable in bi-weekly installments of **$6,000.00**, subject to federal, state and local withholdings and other deductions as may be required by law or as agreed to by the Employee, payable under and in accordance with the State's payroll procedures. In addition thereto, KDADS shall also provide or pay to, or on behalf of, or for the benefit of, the Employee such sums and such other benefits as may be authorized by law or Executive Order for all full time employed persons in the unclassified service of the State. Subject to State of Kansas and KDADS' budgetary constraints, salary increases or other additional benefits may also be provided to the Employee during the term of this Agreement, all of which is at the sole discretion of the Secretary of KDADS. However, Employee's total compensation and bi-weekly payments may be reduced by Hospital or the Appointing Authority if Employee violates any provision of this Agreement or Hospital policies and procedures which results in disciplinary action.

    3.     Term. Unless otherwise terminated herein, the term of this Agreement shall be from the first date of employment **09/30/2024**, through **06/07/2025**, i.e., the end date of the last pay period of the fiscal year.

    4.     Employee's Representations and Warranties. Employee represents and warrants at the time of signing this Agreement and at all times during the term of this Agreement Employee shall assure that:

    a.     Employee is duly licensed, registered and in good standing, or will become duly licensed, by the first date of employment, registered and in good standing under the laws of the State of Kansas, to engage in the practice of medicine, and that said license and registration have not been suspended, revoked, or restricted in any manner;

    b.     Employee shall have current controlled substances registration issued by the United States Drug Enforcement Administration, which registration has not been surrendered, suspended, revoked, or restricted in any manner;

    c.     Employee has disclosed and will at all times during the term of this Agreement promptly disclose to the Hospital and KDADS: (a) the existence and basis of

any legal, regulatory, professional or other proceeding against Employee or any business in which Employee has more than 5% ownership interest instituted by any person, organization, governmental agency, health care facility, peer review organization, or professional society which involves any allegation of substandard care or professional misconduct raised against Employee, and (b) any allegation of substandard care or professional misconduct raised against Employee by any person, organization, governmental agency, health care facility, peer review organization or professional society;

    d.    Employee shall at all times render services to Hospital patients in a competent, professional, and ethical manner, in accordance with prevailing standards of medical care and practice, and all applicable statutes, regulations, rules, orders, and directives of any and all applicable governmental and regulatory bodies having competent jurisdiction;

    e.    In connection with the services to Hospital patients, Employee shall use the equipment, instruments, and supplies of the Hospital for the purposes for which they are intended and in a manner consistent with sound medical practice;

    f.    Employee shall complete and maintain, in a timely manner, adequate, legible and proper medical records, claims and correspondence with respect to all services rendered, to Hospital patients and shall otherwise comply with State of Kansas, Hospital and KDADS record keeping and retention requirements;

    g.    Employee shall abide by the medical staff bylaws, rules, regulations, and policies of the Hospital, KDADS and the State of Kansas;

    h.    Employee shall participate in continuing medical education and training programs required to maintain his or her medical skills;

    i.    Employee shall promptly deliver to the Hospital and/or KDADS upon request copies of all certificates, registrations, and other evidence of Employee's compliance with the foregoing; and

    j.    Employee shall participate in all KDADS required training(s) including, but not limited to, HIPAA, Privacy and Security or Sexual Harassment.

    5.    <u>Standard of Care</u>. Employee shall perform Employee's duties under this Agreement in prompt, professional, and strict conformity with all applicable standards, rulings, regulations, and requirements of the Kansas Board of Healing Arts, Kansas Behavioral Sciences Regulatory Board, the United States Department of Health and Human Services, the laws and regulations of the State of Kansas, the Joint Commission on Accreditation of Healthcare Organizations (the "JCAHO") and any federal, state, or local government agency, or accrediting body having jurisdiction over or providing reimbursement for any programs and/or medical services offered at the Hospital.

    6.    <u>Malpractice Insurance</u>. KDADS agrees to assist the Employee in obtaining insurance in such an amount and against such types of malpractice as KDADS, in its sole discretion, deems appropriate. Procurement of such insurance coverage is a condition precedent to employment. KDADS will either directly pay for or reimburse the Employee the cost of such insurance and such shall be considered as additional compensation for the Employee's services

provided under this Agreement. The Employee agrees to cooperate in the obtaining and maintaining of this coverage and shall immediately notify the Superintendent of any change or circumstance which does or would affect that coverage. The Employee may, at his/her own expense, obtain coverage in addition to that which the Hospital shall arrange, and in the event the Employee elects to do so, shall provide evidence of the coverage and provider to the Superintendent at the time such is initially obtained and at every renewal. If, for whatever reason, KDADS and/or Employee are unsuccessful in obtaining malpractice insurance, this may be grounds for termination.

7.      Termination, Default and Remedies. The Parties agree that this Agreement may be terminated as follows:

a.      Either party hereto may terminate this Agreement without reason or penalty by giving the other party written notice of intent to do so thirty (30) days in advance of such proposed termination;

b.      KDADS may, at its option, terminate this Agreement immediately and without advance notice to Employee in the event of:

(1)   Employee's breach of any material term of this Agreement, which breach is not corrected by Employee within thirty (30) days of the earlier of (a) the occurrence of such breach or the events or circumstances causing such breach, or (b) written notice thereof given to Employee by either the Hospital and/or KDADS;

(2)   Employee's conviction of a felony, or Employee's plea of guilty or no contest with respect to a felony charge;

(3)   Employee's resignation;

(4)   The suspension, termination, or non-renewal of Employee's membership in good standing on the Medical Staff of the Hospital;

(5)   The limitation, suspension, or revocation of Employee's clinical privileges at the Hospital;

(6)   Employee's death, disability or incapacity. For the purposes of this Agreement, and until such time as the Hospital and/or KDADS through amendment of this Agreement or adoption of a standard which supersedes this definition, disability or incapacity shall mean the Employee's absence from or inability to substantially perform Employee's obligations at the Hospital for a consecutive period of sixty (60) days;

(7)   The limitation, suspension, or revocation of Employee's license to practice medicine in the State of Kansas and upon the Hospital grounds or jurisdiction;

(8)   The limitation, suspension, or revocation of Employee's right to prescribe controlled substances;

(9)   Employee's professional misconduct or gross or culpable professional negligence;

(10) Employee's neglect of duty under or violation of the bylaws, rules and regulations, and policies and procedures of the Hospital, KDADS and/or the State of Kansas;

(11) Employee's inability to practice medicine with reasonable skill and safety by reason of Employee's use of alcohol, drugs, chemicals, or any other type of material;

(12) Employee's inability to work with and relate to others, including, but not limited to, patients, ancillary, medical, or administrative staff, in a respectful, cooperative, and professional manner;

(13) Employee's failure to strictly abide by the Incorporated Authorities;

(14) Other good cause including but not limited to failure to procure acceptable malpractice insurance;

(15) The Employee's failure to obtain a Hospital security clearance through one or more background checks;

(16) Contractor's testing positive for TB and refusal of TB Tine; or

(17) At the discretion of the Secretary.

c. This Agreement shall automatically terminate upon the event of the Employee's death, subject only to any unpaid and earned monthly installment, or portion thereof, and any death benefit or allowance authorized by law for all persons in the unclassified service of the State.

8. Patient Records. Employee acknowledges that all patient records, x-rays, and related medical records of the practice, and all copies thereof, are and shall remain the property of the Hospital/KDADS. Upon the expiration or earlier termination of Employee's employment with KDADS, Employee shall return to the Hospital all records in Employee's possession, custody or control.

9. Authority of Employee. Unless expressly authorized by KDADS, Employee shall have no authority under this Agreement, or otherwise, to enter into contracts or agreements on behalf of the Hospital and/or KDADS.

10. Self-Dealing: Financial Relationships. Employee shall exercise the utmost good faith to ensure that none of Employee's financial relationships outside the Hospital including, but not limited to, the financial relationships of Employee's immediate family members, lead to Employee's personal gain, profit, or other pecuniary advantage.

11. Conflicts of Interest. In addition to strict compliance with KDADS' outside employment (conflict of interest) policy and all applicable Kansas statutes/regulations governing State of Kansas employees, and other provisions contained in this Agreement, Employee hereby agrees that Employee shall exercise the utmost good faith to ensure that Employee does not (a) have any interest, financial or otherwise, direct or indirect, (b) engage in any business or transaction, (c) incur any obligation of any nature, or (d) render directive, managerial, consultative, or professional medical or medico-administration service which is in conflict with the Employee's duties to the Hospital and/or KDADS.

12.    Retention of and Access to Records. All records prepared pursuant to this Agreement shall be retained and safeguarded for a five-year period following termination of this Agreement, and said records shall be made available to any other party to this Agreement, and independent auditor retained by any other party, the Secretary of Health & Human Services, the U.S. Comptroller General, the Auditor of the Kansas Legislative Division of Post Audit, or their designees. Each party shall bear the costs of storing, retrieving, and producing its records created and required to be kept under this Agreement.

13.    Health Insurance Portability and Accountability Act ("HIPAA") and Health Information Technology for Economic and Clinical Health Act ("HITECH"): KDADS is a covered entity under HIPAA and therefore Employee is not permitted to use or disclose health information in ways that KDADS could not, and this protection continues as long as the data is in the hands of the Employee. On January 25, 2013, HHS promulgated new and final rules implementing the HI TECH Act effective on or about September 23, 2013. A copy of KDADS' revised BA AGT addressing the new rules may be found at: https://www.kdads.ks.gov/provider-home/forms. Employee shall complete the form, print, sign and mail the BA AGT to KDADS "Legal Division." Thereafter, a fully executed document will then be forwarded electronically to the Employee. In the event that Employee receives protected health information, it shall comply with the terms of the BA AGT, as it presently exists or as modified/amended, as if the same were set forth in full herein. Notwithstanding such BA AGT, the Employee shall at all times comply with HIPAA and the HI TECH ACT, as amended.

14.    Incorporation of the State of Kansas Contractual Provisions Attachment. The provisions of Contractual Provisions Attachment, Form DA-146a (Rev. 6/12), a copy of which is attached hereto and identified as Appendix A, are incorporated by this reference as if the same were set forth in full herein.

15.    Service of Notices. All notices required or which may be given pursuant to this Agreement shall be in writing, personally delivered by courier or commercial delivery service, electronic, or sent by facsimile and United States mail, first class, postage prepaid, to the following addresses or such other address as may be designated in writing by the named person during the term of this Agreement:

        If to Employee:

        Lucyanne Okwomi. PMHNP - BC
        ███████ ██ █
        ███████████████

        If to KDADS:

        ████████, Secretary
        Kansas Department for Aging and Disability Services
        503 South Kansas Avenue
        Topeka, Kansas 66603-3404

        And

        Superintendent
        ████████████

Osawatomie State Hospital
500 State Hospital Drive
Osawatomie, Kansas  66064

With a copy to:

Chief Counsel-Legal Division
Kansas Department for Aging and Disability Services
503 South Kansas Avenue
Topeka, Kansas 66603-3404

16.    Amendment or Assignment. Modification or amendment to this agreement shall be in writing and executed with the same formality as the original. Similarly, this Agreement shall not be assigned unless approved in writing by the Parties hereto. Any proposed assignment which has not been approved in writing shall be void and of no effect.

17.    Waiver of Breach. Waiver of a breach in performance of any term of this Agreement by KDADS shall not be construed as a waiver of any subsequent breach of the same or any other performance or provision of this Agreement.

18.    Invalidity. Any provision of this Agreement determined to be invalid or unenforceable shall not affect the validity or enforceability of the remaining provisions, and in all respects the agreement shall be construed as if such invalid or unenforceable provision was omitted.

19.    Prior Negotiations. This Agreement supersedes all prior negotiations and agreements between these Parties with respect to the matters stated herein, and it represents the entire understanding of the Parties.

20.    Governing Law. This Agreement shall be governed by the laws of the State of Kansas. Should judicial intervention be required, the Parties agree that venue shall only be proper in the District Court for Shawnee County, Kansas.

21.    Signatures. The Agreement (and any amendments, modifications, or waivers in respect hereof) may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same document. Facsimile signatures, electronic signatures via KDADS' electronic contract application or signatures emailed in portable document format (PDF) shall be acceptable and deemed binding on the Parties hereto as if they were originals.

22.    Terms Read and Understood. The signatories to this Agreement certify that they have read this Agreement, have had the opportunity to confer with counsel, and fully understand all of the terms, and the Parties acknowledge and represent that they enter into this Agreement of their own free will, and not from any representation, commitment, promise, pressure or duress from any other party.

23.    Cooperation. The Parties agree to fully cooperate with each other in the performance hereunder, and will execute such additional agreements, documents, or instruments, if any, as may reasonably be required to carry out the intent of the Agreement.

24.    Authorization. The person who executed this Agreement by or on behalf of each respective Party or individual, as applicable, represents and warrants that he/she has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party and that all necessary corporate approvals have been obtained.

25.    Additional Assurances. The provisions of this Agreement shall be self-operative and shall not require further agreement by the Parties except as may be herein specifically provided to the contrary; provided, however, that at the request of either Party, the other Party shall execute such additional instruments and take such additional acts as are necessary or useful to effectuate this Agreement.

26.    Binding Effect. This Agreement shall be binding on and inure to the benefit of the Parties and their heirs, executors, administrators, and respective successors and permitted assigns.

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the date as set forth herein.

**KANSAS DEPARTMENT FOR AGING AND DISABILITY SERVICES**

**EMPLOYEE**

███████

Lucyanne Okwomi, PMHNP - BC

Secretary

Psych APRN

License No.  53-78074-112

Date: _____

Date:  9/27/2024

**Seen and Agreed:**
**OSAWATOMIE STATE HOSPITAL**

███████

Superintendent

Date: _____

State of Kansas
Department of Administration DA-146a
(Rev. 07-19)                               **APPENDIX A**
                              **CONTRACTUAL PROVISIONS ATTACHMENT**

Important:  This form contains mandatory contract provisions and must be attached to or incorporated in all copies of any contractual agreement. If it is attached to the vendor/contractor's standard contract form, then that form must be altered to contain the following provision:

> The Provisions found in Contractual Provisions Attachment (Form DA-146a, Rev. 07-19), which is attached hereto, are hereby incorporated in this contract and made a part thereof.

> The parties agree that the following provisions are hereby incorporated into the contract to which it is attached and made a part thereof, said contract being the 30th day of September, 2024.

1. **Terms Herein Controlling Provisions**: It is expressly agreed that the terms of each and every provision in this attachment shall prevail and control over the terms of any other conflicting provision in any other document relating to and a part of the contract in which this attachment is incorporated. Any terms that conflict or could be interpreted to conflict with this attachment are nullified.

2. **Kansas Law and Venue**: This contract shall be subject to, governed by, and construed according to the laws of the State of Kansas, and jurisdiction and venue of any suit in connection with this contract shall reside only in courts located in the State of Kansas.

3. **Termination Due To Lack Of Funding Appropriation**: If, in the judgment of the Director of Accounts and Reports, Department of Administration, sufficient funds are not appropriated to continue the function performed in this agreement and for the payment of the charges hereunder, State may terminate this agreement at the end of its current fiscal year. State agrees to give written notice of termination to contractor at least thirty (30) days prior to the end of its current fiscal year and shall give such notice for a greater period prior to the end of such fiscal year as may be provided in this contract, except that such notice shall not be required prior to ninety (90) days before the end of such fiscal year. Contractor shall have the right, at the end of such fiscal year, to take possession of any equipment provided State under the contract. State will pay to the contractor all regular contractual payments incurred through the end of such fiscal year, plus contractual charges incidental to the return of any such equipment. Upon termination of the agreement by State, title to any such equipment shall revert to contractor at the end of the State's current fiscal year. The termination of the contract pursuant to this paragraph shall not cause any penalty to be charged to the agency or the contractor.

4. **Disclaimer Of Liability**: No provision of this contract will be given effect that attempts to require the State of Kansas or its agencies to defend, hold harmless, or indemnify any contractor or third party for any acts or omissions. The liability of the State of Kansas is defined under the Kansas Tort Claims Act (K.S.A. 75-6101, *et seq.*).

5. **Anti-Discrimination Clause**: The contractor agrees: (a) to comply with the Kansas Act Against Discrimination (K.S.A. 44-1001, *et seq.*) and the Kansas Age Discrimination in Employment Act (K.S.A. 44-1111, *et seq.*) and the applicable provisions of the Americans With Disabilities Act (42 U.S.C. 12101, *et seq.*) (ADA), and Kansas Executive Order No. 19-02, and to not discriminate against any person because of race, color, gender, sexual orientation, gender identity or expression, religion, national origin, ancestry, age, military or veteran status, disability status, marital or family status, genetic information, or political affiliation that is unrelated to the person's ability to reasonably perform the duties of a particular job or position; (b) to include in all solicitations or advertisements for employees, the phrase "equal opportunity employer"; (c) to

comply with the reporting requirements set out at K.S.A. 44-1031 and K.S.A. 44-1116; (d) to include those provisions in every subcontract or purchase order so that they are binding upon such subcontractor or vendor; (e) that a failure to comply with the reporting requirements of (c) above or if the contractor is found guilty of any violation of such acts by the Kansas Human Rights Commission, such violation shall constitute a breach of contract and the contract may be cancelled, terminated or suspended, in whole or in part, by the contracting state agency or the Kansas Department of Administration; (f) Contractor agrees to comply with all applicable state and federal anti-discrimination laws and regulations; (g) Contractor agrees all hiring must be on the basis of individual merit and qualifications, and discrimination or harassment of persons for the reasons stated above is prohibited; and (h) if it is determined that the contractor has violated the provisions of any portion of this paragraph, such violation shall constitute a breach of contract and the contract may be canceled, terminated, or suspended, in whole or in part, by the contracting state agency or the Kansas Department of Administration.

6. **Acceptance of Contract**: This contract shall not be considered accepted, approved or otherwise effective until the statutorily required approvals and certifications have been given.

7. **Arbitration, Damages, Warranties**: Notwithstanding any language to the contrary, no interpretation of this contract shall find that the State or its agencies have agreed to binding arbitration, or the payment of damages or penalties. Further, the State of Kansas and its agencies do not agree to pay attorney fees, costs, or late payment charges beyond those available under the Kansas Prompt Payment Act (K.S.A. 75-6403), and no provision will be given effect that attempts to exclude, modify, disclaim or otherwise attempt to limit any damages available to the State of Kansas or its agencies at law, including but not limited to, the implied warranties of merchantability and fitness for a particular purpose.

8. **Representative's Authority to Contract**: By signing this contract, the representative of the contractor thereby represents that such person is duly authorized by the contractor to execute this contract on behalf of the contractor and that the contractor agrees to be bound by the provisions thereof.

9. **Responsibility for Taxes**: The State of Kansas and its agencies shall not be responsible for, nor indemnify a contractor for, any federal, state or local taxes which may be imposed or levied upon the subject matter of this contract.

10. **Insurance**: The State of Kansas and its agencies shall not be required to purchase any insurance against loss or damage to property or any other subject matter relating to this contract, nor shall this contract require them to establish a "self-insurance" fund to protect against any such loss or damage. Subject to the provisions of the Kansas Tort Claims Act (K.S.A. 75-6101, *et seq.*), the contractor shall bear the risk of any loss or damage to any property in which the contractor holds title.

11. **Information**: **No provision of this contract shall be construed as limiting the Legislative Division of Post Audit from having access to information pursuant to K.S.A. 46-1101, *et seq.***

12. **The Eleventh Amendment**: "The Eleventh Amendment is an inherent and incumbent protection with the State of Kansas and need not be reserved, but prudence requires the State to reiterate that nothing related to this contract shall be deemed a waiver of the Eleventh Amendment."

13. **Campaign Contributions / Lobbying:** Funds provided through a grant award or contract shall not be given or received in exchange for the making of a campaign contribution. No part of the funds provided through this contract shall be used to influence or attempt to influence an officer or employee of any State of Kansas agency or a member of the Legislature regarding any pending legislation or the awarding, extension, continuation, renewal, amendment or modification of any government contract, grant, loan, or cooperative agreement.

# Exhibit "D"

 Gmail

Lucyanne Okwomi

## Hand offs
25 messages

**Lucyanne Okwomi**                                                                 Thu, Feb 13, 2025 at 2:21 PM
To:


I am not getting hand-offs via email on admissions that are being passed on, seclusions and transfers with one of you being cc'd like we had discussed on 2/03. I only received one from Dr. Webb on 2/05.
Also and I reported this to Lissa this morning, Jennifer is going on the book that we write shift report and scratching off part of my report for my shift.
thanks
Lucyanne

# Exhibit "E"



Osawatomie State Hospital
Ashley Byram, LMSW, Superintendent
500 State Hospital Drive
Osawatomie, KS 66064-0500

**Kansas**
Department for Aging
and Disability Services

Phone: (913) 755-7000
www.kdads.ks.gov/OSH

Laura Howard, Secretary

Laura Kelly, Governor

April 29, 2025

Lucyanne Okwomi

▮▮▮▮▮▮▮▮

RE: Dismissal

Dear Ms. Okwomi:

This letter is to provide notice that KDADS is expressing its right to terminate the Employment Agreement for Licensed Medical Services with you, effective May 29, 2025, Specifically, KDADS is expressing provision 7.a., which states,

> Termination, Default and Remedies. The Parties agree that this Agreement may be terminated as follows:
>
> a. Either party hereto may terminate this Agreement without reason or penalty by giving the other party written notice of intent to do so thirty (30) days in advance of such proposed termination;

The agreement between KDADS and yourself will be terminated, effective May 29, 2025. Please return any and all KDADS items in your possession. If you have any questions or concerns, please contact Tyler E▮▮▮▮▮ at 913-755 -7106

Sincerely,

Ashley B▮▮▮▮, LMSW
Superintendent

# Exhibit "F"

**Lucyanne Okwomi** ███████████████                               Fri, Feb 14, 2025 at 11:13 AM
To: "Merma G███ [OSH]"
Cc: "Tyler E███ OSH]" ████████████          ,"Ashley B███ [OSH]" █████████

You said the hand offs in the conference room in the  last meeting
I requested to have admissions that are being passed on to be send in an email with at least their last names because I am not getting this in report and there has been a lot of discrepancies, admissions not getting seen that had come in previous shift. I requested this to protect my self and also so there is transparency on who is doing what admission and to make sure everyone is being seen so I am not being blamed for it
again harassments from Jennifer still continues, last night it was a fight again from Jennifer, she started arguing with me about report and the book in a very offensive,demeaning and intimidating manner when I tried picking up phone, bag and report from her. I call the on call when I get there for report, there is a record of that on my phone but she does not pick up when I CALL FOR Report.
She is still trying to talk to me in the cottage on 2/12 even when it was clearly stated that report should be given off the cottage.
She is using the nurses station and the nurses to try to intimidate me when I go to pick up the phone and report.
Something needs to be done this is discriminatory and creating a very hostile and offensive work environment and this behavior is still going on

# Exhibit "G"



Osawatomie State Hospital
Ashley Byram, LMSW, Superintendent
500 State Hospital Drive
Osawatomie, KS 66064-0500

**Kansas**
Department for Aging
and Disability Services

Phone: (913) 755-7000
www.kdads.ks.gov/OSH

Laura Howard, Secretary

Laura Kelly, Governor

March 28, 2025

{Certified/Regular}

Lucyanne Okwomi
██████████████
██████████████

RE:  Return to Work Following Administrative Leave

Dear Ms. Okwomi:

This letter is a follow up on your Administrative Leave with pay since March 4, 2025.  This allegation was turned over to Michael P███ KDADS Investigator, who conducted thorough investigations.

A report of the investigations was provided to me for review and a determination regarding further action. You are hereby notified to return to work on Monday, March 31, 2025, for your scheduled shift. You are not to return to the on-call cottage, and the key to the cottage will need to be turned into Human Resources. You will be able to utilize the East, or West Biddle conference rooms as workspace during your scheduled shifts.

As you know, we are required by law and agency policy to fully investigate all allegations made against our employees.  Our laws and policies are designed to protect the residents that we serve as well as our employees. I want to thank you for your cooperation during this investigation.

Sincerely,

Ashley B███ LMSW
Superintendent

cc:    Director Secretary of Management (█████████)
       Deputy Director, DPS (█████████)
       ████ ████, HR Director for State Hospitals, KDADS
       █████████, Senior Counsel, KDADS
       █████████, Chief Counsel, KDADS
       █████████, OSH Human Resources Director
       ██ ████ █████ MD, Clinical Director
       Personnel File

Exhibit "H"



Osawatomie State Hospital
Ashley Byram, LMSW, Superintendent
500 State Hospital Drive
Osawatomie, KS 66064-0500

**Kansas**
Department for Aging
and Disability Services

Phone: (913) 755-7000
www.kdads.ks.gov/OSH

Laura Howard, Secretary

Laura Kelly, Governor

May 9, 2025

{Regular Mail}

Lucyanne Okwomi
████ █ █ ████

Dear Ms. Okwomi:

This letter is to inform you that on April 29, 2025, we you were provided a dismissal letter stating, "The agreement between KDADS and yourself will be terminated, effective May 29, 2025". However, today, I have received your keys turned into our office, I am treating such actions as a resignation. I am accepting your resignation from the Osawatomie State Hospital as an unclassified Advance Practice Registered Nurse (APRN) effective May 9, 2025. I am advising you that your resignation is not in good standing because you failed to give the required two week's advance written notice. A statement concerning this failure will also be in your personnel file.

If you have any state property in your possession you can either drop these items off at the Human Resources office or mail them to the Human Resources office, 500 State Hospital Drive, Osawatomie, KS 66064 no later than May 23, 2025, to avoid any charges. Please arrange with Human Resources to pick up any personal belongings you have here at the Hospital.

If you have any questions, please call Rachel Morrison, Assistant Human Resources Director at 913-755-7104.

Sincerely,



Ashley B████ LMSW
Superintendent

cc:     Clinical Director (████████)
        OSH Human Resources Department
        Personnel File

# Exhibit "I"



Osawatomie State Hospital
Ashley Byram, LMSW, Superintendent
500 State Hospital Drive
Osawatomie, KS 66064-0500

**Kansas**
Department for Aging
and Disability Services

Phone: (913) 755-7000
www.kdads.ks.gov/OSH

Laura Howard, Secretary

Laura Kelly, Governor

May 1, 2025

Lucyanne Okwomi

Dear Ms. Okwomi:

Your last day of employment with Osawatomie State Hospital (OSH) will be May 29, 2025, and there are several things you should be aware of as you terminate your employment here:

- As of 04/12/2025, your leave balances are:
  - (a)   4.40 hours of sick leave.  These hours are generally forfeited, however you selected to donate your sick time to shared leave.
  - (b)   4.40 hours of vacation time.  You will be paid for unused vacation hours up to a maximum of 144 hours. These hours will be paid to you on your final check.

- There are items in your possession that must be returned before you leave, i.e. uniforms, accessories, ID badge and keys etc. You are required to work with HR/Supervisor to return all state property remaining in your possession.

- You have not accrued enough service to vest with the Kansas Public Employee's Retirement System (KPERS).  You must withdraw your contributions within the next five years.

  (a) You may choose to withdraw your contributions as a lump sum.  If you do this, the plan is required to withhold 20% for income tax withholding, and an additional 10% tax will be taken if you withdraw from the fund before age 59 ½.  If you roll over the funds directly into an IRA, there will be no taxes or penalties.  If you decide to withdraw your funds, please note that interest is only credited on July 1st, so withdrawal should be scheduled as soon after July 1st as possible.

- Your Group Health Insurance (if you have it) will terminate on 05/31/2025. The Division of Personnel Services will be sending information to you at your home address regarding the Consolidated Omnibus Budget Reconciliation Act, (COBRA). This is an opportunity for you to temporarily continue your health insurance if you wish.

Lucyanne Okwomi
05/01/2025
Page 2

You currently have life insurance through KPERS in the amount of 150 percent of your annual rate of compensation. You may elect to convert or port this policy to an individual policy. The form to convert or port this insurance is enclosed.

If you have any questions regarding the above, please contact HR at (913)755-7333.

Enclosures: Conversion Packet, Portability Packet, and KPERS Leaving Employment Packet

Sincerely,

Assistant Human Resource Director

cc:  ▉▉▉▉▉, Clinical Director
     ▉▉▉▉▉, Superintendent
     Personnel File

# Exhibit "J"



Osawatomie State Hospital
Ashley Byram, LMSW, Superintendent
500 State Hospital Drive
Osawatomie, KS 66064-0500

**Kansas**
Department for Aging
and Disability Services

Phone: (913) 755-7000
www.kdads.ks.gov/OSH

Laura Howard, Secretary

Laura Kelly, Governor

May 1, 2025

**Updated**

Lucyanne Okwomi



Dear Ms. Okwomi:

Your last day of employment with Osawatomie State Hospital (OSH) will be May 29, 2025, and there are several things you should be aware of as you terminate your employment here:

- As of 04/12/2025, your leave balances are:
  - **(a)** 4.40 hours of sick leave. These hours will be forfeited, **however if you return to state employment within one year, the hours will be restored to you.**
  - **(b)** 4.40 hours of vacation time. You will be paid for unused vacation hours up to a maximum of 144 hours. These hours will be paid to you on your final check.

- There are items in your possession that must be returned before you leave, i.e. uniforms, accessories, ID badge and keys etc. You are required to work with HR/Supervisor to return all state property remaining in your possession.

- You have not accrued enough service to vest with the Kansas Public Employee's Retirement System (KPERS). You must withdraw your contributions within the next five years.

  (a) You may choose to withdraw your contributions as a lump sum. If you do this, the plan is required to withhold 20% for income tax withholding, and an additional 10% tax will be taken if you withdraw from the fund before age 59 ½. If you roll over the funds directly into an IRA, there will be no taxes or penalties. If you decide to withdraw your funds, please note that interest is only credited on July 1st, so withdrawal should be scheduled as soon after July 1st as possible.

- Your Group Health Insurance (if you have it) will terminate on 05/31/2025. The Division of Personnel Services will be sending information to you at your home address regarding the Consolidated Omnibus Budget Reconciliation Act, (COBRA). This is an opportunity for you to temporarily continue your health insurance if you wish.

Lucyanne Okwomi
05/01/2025
Page 2

You currently have life insurance through KPERS in the amount of 150 percent of your annual rate of compensation. You may elect to convert or port this policy to an individual policy. The form to convert or port this insurance is enclosed.

If you have any questions regarding the above, please contact HR at (913)755-7333.

Enclosures: Conversion Packet, Portability Packet, and KPERS Leaving Employment Packet

Sincerely,

Assistant Human Resource Director

cc: ▮▮▮▮▮▮, Clinical Director
    ▮▮▮▮▮▮, Superintendent
    Personnel File

# Exhibit "K"



New England Building
503 South Kansas Avenue
Topeka, KS 66603-3404

**Kansas**
Department for Aging
and Disability Services

Phone: (785) 296-4986
Fax: (785) 296-0256
kdads.wwwmail@ks.gov
www.kdads.ks.gov

Laura Howard, Secretary

Laura Kelly, Governor

September 16, 2025

▮▮▮▮▮▮▮

Equal Employment Opportunity Commission
Kansas City Area Office
400 State Ave, Suite 905
Kansas City, KS 66101

**RE:    Lucyanne Okwomi v. Osawatomie State Hospital, EEOC Charge Number 563-2025-04052**

      **OSH's Response to the EEOC Charge of Discrimination**

To Whom it May Concern:

Osawatomie State Hospital (OSH) received the dually filed EEOC/KHRC Charge of Discrimination from Complainant Lucyanne Okwomi and submits the Position Statement.[1] As the KHRC has deferred the initial investigation to the EEOC, the Position Statement identifies and includes the relevant documents and information requested by the EEOC. The Kansas Department for Aging and Disability Services (KDADS) and OSH reserve the right to supplement its answer if new information becomes available.

## A.  BACKGROUND INFORMATION

OSH is a state psychiatric hospital providing services to individuals with mental illness. OSH is located at 500 State Hospital Drive, Osawatomie, Kansas 66064. OSH is currently operated by KDADS. KDADS is located at 503 South Kansas Avenue, Topeka, Kansas 66603. OSH is currently licensed by the Kansas Department of Health and Environment (KDHE). OSH is governed by the Care and Treatment Act for Mentally Ill Persons, which gives rules for admission to, operations of, and discharge from a state psychiatric hospital. K.S.A. 59-2945 *et al*.

Complainant was employed as a contract Advance Practice Registered Nurse "Nurse Practitioner" at OSH. **(ATTACHMENT A – JOB DESCRIPTION); (ATTACHMENT B – OKWOMI CONTRACT).**

## B.  RESPONSE TO COMPLAINT

On August 1, 2025, Complainant submitted her complaint to the EEOC/KHRC. Contained within her initial complaint is the claim that, beginning on or about January 27, 2025, she started being harassed by a coworker. This coworker would allegedly yell at Complainant, call her names, make fun of her accent, and call her a "black monkey." This coworker would allegedly follow her around, block Complainant from doing her job, and use people to help prevent Complainant from working. Complainant alleges it was to the

---

[1] Concerning the EEOC/KHRC Charge of Discrimination, the direct employer of Complainant is OSH—not KDADS. KDADS maintains it is not the direct employer of Complainant. The correct Respondent to Complainant is OSH. Nevertheless, Legal Counsel for KDADS submits OSH's Response to the EEOC/KHRC Charge of Discrimination because KDADS currently operates OSH.

degree where at times Complainant would have to hide in the bathroom. Complainant alleges she reported this conduct to HR, the superintendent, and her supervisor "many times." Complainant alleges she was then told she was under investigation, but that the harassment did not stop. On or around March 4, 2025, Complainant alleges she was put on administrative leave for driving recklessly in the drive, having oil at work, and praying. Complainant then alleges that she returned from administrative leave on or around March 28, 2025 and was discharged from her position on May 1, 2025 without any explanation. Complainant subsequently alleges that she was discriminated against based on race, ethnicity, religion, and retaliation. It should be noted Complainant did not allege in her complaint that she was subjected to the discharge because she is a member of any protected class, or that *the conduct was the result* of any retaliation.

In response to the complaint, KDADS asserts that neither OSH nor KDADS caused or permitted any discrimination, harassment, or retaliation against Complainant. The claims of discrimination will be addressed in the respective order to which they were asserted.

   A. **CLAIM:** Complainant alleges that beginning on or about January 27, 2025, she started being harassed by a coworker. This coworker would allegedly yell at Complainant, call her names, make fun of her accent, and call her a "black monkey." This coworker would allegedly follow Complainant around, block her from doing her job, and use people to help prevent her from working. Complainant alleges it was to the degree where at times she would have to hide in the bathroom. Complainant alleges she reported this conduct to HR, the superintendent, and her supervisor "many times".

**KDADS/OSH Response:** KDADS/OSH respond that they received a complaint on or about February 3, 2025 regarding Harassment, Sexual Harassment, unhealthy work environment, as well as a claim of (APRN) Supervisors "ganging" up on her. (ATTACHMENT C – KDADS INVESTIGATION 2015-12) This investigation included Complainant's claim that she reported feelings of being harassed by a coworker named Jennifer C▮▮▮, a fellow APRN. Complainant also reported that Jennifer C▮▮▮ allegedly put her hand on Complainant's shoulder and tried to "summon her into a room." Complainant lastly reported that Jennifer C▮▮▮ "picks on women of color." These claims were thoroughly investigated and were found to be unsubstantiated. The investigation did find "apparent tension between Ms. Okwomi and Ms. C▮▮▮" but did not find any corroborating evidence of the facts as alleged by Complainant, and therefore, they could not be substantiated. Despite the lack of evidence of alleged claims, the Chief Medical Officer of OSH put in place certain protocols to assist in mitigating the tension between Complainant and Jennifer C▮▮▮ moving forward. The findings of the investigation are quoted below verbatim:

**Conclusion:**

Based upon the lack of corroborating evidence from the above witnesses. The allegation that Jennifer C▮▮▮ engaged in harassment and bullying toward another staff member, Ms. Okwomi, remains unsubstantiated due to a lack of independent verification. Ms. Okwomi has filed multiple formal complaints regarding the alleged misconduct[2]; however, despite repeated requests for specific details, she has not been able to provide clear, verifiable instances of harassment attributed to Ms. C▮▮▮ or any other staff member. Additionally, Ms. Okwomi has been unable to identify any witnesses who could corroborate her claims.

---

[2] Although this statement was made that Ms. Okwomi submitted "multiple formal complaints", OSH HR, the assigned investigator, and OSH Leadership can confirm that this was a typo and was meant to assert the multiple allegations in her complaint, as there were not multiple independent complaints issued by Complainant.

In response to these accusations, Ms. C█████has explicitly denied any involvement in harassment or bullying. Instead, she has countered by asserting that Ms. Okwomi has been the source of workplace disruption. At this time, neither party's complaints can be fully substantiated with objective evidence. A key factor contributing to the difficulty in verifying these claims is that most of the alleged incidents took place in settings where the two individuals were alone either within the on-call cottage or in other private workspaces.

To address the ongoing conflict, both Ms. Okwomi and Ms. C█████participated in a formal meeting with the clinical director. During this meeting, each individual was given the opportunity to voice their grievances and present their perspectives on the matter. The key points discussed in the meeting were documented in the official minutes, and both parties reviewed and agreed upon the summarized account of the discussion.

Given the apparent tension between Ms. Okwomi and Ms. C█████ it may be necessary to implement further measures to ensure a positive and productive work environment.

It should be noted that, in her interview, Complainant never stated that she was ever called a "black monkey", nor did she state she was ever "followed around, block[ed] … from doing her job, or that other people prevented her from working," or that she ever had to hide in the bathroom out of fear from Ms. C█████or other coworkers. Despite having a wide variety of assertions against Ms. C█████ Complainant never brought any of the above claims to the attention of OSH HR, her supervisor (Dr. Merma G█████, Ms. Okwomi and Ms. C█████supervisor) or OSH Leadership. Although not required, KDADS State Hospital Policy 3.1.D, "Complaints of Harassment & Discrimination" (ATTACHMENT D – 3.1.D) encourages employees to report this behavior,

It is the responsibility of any employee who believes they have been subjected to harassment and/or discrimination to bring their complaint to their immediate supervisor and Human Resources (HR). If the employee feels that it is his or her immediate supervisor who caused or knowingly condoned the harassment, then the employee should go to that supervisor's supervisor and HR.

It is the responsibility of every employee to report harassment or discrimination of which they become aware. Anytime a harassment or discrimination complaint is made, the agency will take immediate action to investigate the complaint and will take appropriate disciplinary action. The employee making the complaint will receive notification of the completion of the investigation regarding the complaint. HR will be available to facilitate a meeting should all employees involved in the complaint agree to discuss any concern(s) raised.

This policy implements KDADS State Hospital Policy on Discrimination/Harassment (ATTACHMENT E – 3.1) and Equal Opportunity/Affirmative Action (ATTACHMENT F – 3.1.B)

Contrary to Complainant's claims, OSH HR, Complainant's supervisor, and Leadership has never received any reports claiming that Complainant was ever called a "black monkey"; that a coworker would allegedly yell at Complainant, call her names, or make fun of her accent. Nor did OSH HR, her supervisor, or OSH Leadership receive any report that the alleged coworker would  follow Complainant around, block her from doing her job, and/or use people to help prevent Complainant from working, or that Complainant ever had

to hide in the bathroom., Significantly, at no point did Complainant ever assert these these things to the investigator, despite ample opportunity to do so.

In response to the complaints, OSH/KDADS conducted a thorough investigation of the claims asserted by Complainant and found them unsubstantiated. Furthermore, despite Complainant being given ample opportunity to speak with the investigator, she never asserted the various claims asserted in her EEOC complaint to the investigator, OSH HR, her supervisor, or OSH leadership. Therefore, KDADS/OSH deny these claims as asserted by Complainant.

    B.  CLAIM: Complainant alleges she was then told she was under investigation, but that the harassment did not stop.

**KDADS/OSH Response:**  KDADS/OSH states that the complaint is unclear who "she" is in this context of who was under investigation, but believes Complainant is asserting that she was told Jennifer C███ was under investigation. As addressed in the previous matter, Ms. C███ was under investigation for the aforementioned claims. However, there were no complaints or assertions by Complainant to OSH HR, her supervisor or OSH Leadership that asserted the alleged behavior. Therefore, KDADS/OSH deny this claim as asserted by Complainant.

    C.  CLAIM: On or around March 4, 2025, Complainant alleges she was put on administrative leave for driving recklessly in the drive, having oil at work, and praying. Complainant alleges that she returned from administrative leave on or around March 28, 2025.

**KDADS/OSH Response:** KDADS/OSH state that on or about March 4, 2025, OSH received a complaint by Jennifer C███ that Complainant was "observed drivingly recklessly almost hitting Jennifer C███ vehicle and chanting bodily harm." (ATTACHMENT G – KDADS Investigation 2025-21). This investigation also included a complaint by Ms. C███ regarding the usage of oil by Complainant in the OSH cottages, where Ms. C███ also works at some points, was possibly causing damage to the walls and other OSH property. Complainant was placed on paid administrative leave during the course of this investigation in relation to these complaints. Contrary to Complainant's insinuations, KDADS/OSH affirmatively aver that Complainant was, in no way, placed on paid Administrative Leave for any discriminatory or retaliatory purpose. After the claims were thoroughly investigated, the findings were partially substantiated and partially unsubstantiated, reflected in the investigation verbatim as such:

    **Conclusion:**

    Based on the corroborating statements and the absence of conclusive evidence from the involved witnesses, the allegation that Lucyanne Okwomi's chanting about bodily harm is *unsubstantiated*. Ms. Okwomi was performing her religious practice behind a closed and locked door, which she believed was a private space meant for her personal prayer. Importantly, the chant was not directed at any individual, and no specific person's name was mentioned within the video. While the phrasing of the prayer may have been unsettling for some, without proper context or understanding of its intent, it cannot be assumed to breach any regulations or laws.

    The referenced statute, **KS 60-5303**, addresses the right to exercise religion without government interference. Specifically, it states that "Government shall not substantially burden a person's civil right to exercise religion," even if such a burden arises from a law or regulation of general applicability. The statute further establishes that the government must demonstrate clear and

convincing evidence that applying the burden to a person is necessary, which in this case, the evidence does not support.

Therefore, given the private nature of the prayer, the lack of direct harm, and the legal protections for religious expression, there is no clear violation of the law or the civil rights of Ms. Okwomi.

Based on the corroborating statements from the witnesses, the claim that Lucyanne Okwomi caused damage to OSH property remains *inconclusive*. When asked, "Did Ms. Okwomi use an oil-based perfume?" the answer was "yes." However, when questioned, "Did Ms. Okwomi know that it would cause damage?" the response was "no." There was no explicit instruction given to Ms. Okwomi prohibiting the use of oil-based perfume, even after housekeeping staff noticed that the oil was not coming clean. The perfume in question is a commonly available product from Bath and Body Works. Despite this, it remains unclear why Ms. Okwomi chose to place the oil around the cottage, diverging from its primary intended use.

Based on the corroborating statements from the witnesses and the video evidence provided, the allegation that Lucyanne Okwomi was driving recklessly on OSH property is *substantiated*. On March 3rd, 2025, a red Honda Civic, belonging to Ms. Okwomi, was captured on camera engaging in reckless driving behavior. The footage clearly shows the vehicle speeding through a designated intersection without coming to a stop, in violation of traffic regulations. Additionally, the vehicle was observed exceeding the posted speed limit of 20 mph, further confirming the reckless nature of the driving. The license plate visible on the red Honda in the video matches the vehicle owned by Ms. Okwomi, which she was known to be driving that night, linking her directly to the incident.

As stated in the investigation, Jennifer C███'s claims of Complainant chanting bodily harm, or usage of oil were not found to be inappropriate or in violation of KDADS/OSH policies. The claim of reckless driving by Complainant, however, was corroborated and, therefore, substantiated. A Letter of Reprimand was prepared to be delivered to Complainant on her return to work. Since Complainant chose not to ever return to work, no such letter was provided, as addressed in the subsequent section.

D.  CLAIM: Complainant alleges she returned from administrative leave on or around March 28, 2025 and was discharged from her position on May 1, 2025 without any explanation.

**KDADS/OSH Response:** KDADS/OSH states that after the investigation into the chanting of bodily harm and reckless driving had concluded, OSH issued a "return to work" letter to Complainant, notifying her that she must return to work on Monday, March 31, 2025, for her scheduled shift (ATTACHMENT H – RETURN TO WORK LETTER). However, Complainant never returned to work on or after this date. From the dates of March 31, through April 29, 2025, Complainant called in and never reported to work. After Complainant called in for approximately a month, thereby refusing to return to work, OSH issued a "no cause" termination of Complainant's employment, pursuant to Complainant's contract with OSH (ATTACHMENT I – No Cause Termination Letter). OSH sent a "no cause" termination to Complainant on April 29, 2025, advising that her employment would terminate at the close of business on May 29, 2025. The "no cause" termination letter also stated "The agreement between KDADS and yourself will be terminated, effective May 29, 2025. Please return any and all KDADS items in your possession."

Subsequently, on or about May 9, 2025, Complainant returned the items in her possession, not waiting until the May 29, 2025 date, the termination of employment date. For this reason, the return of the items was accepted as an immediate resignation, effective May 9, 2025, as no statement of intent to continue to

perform her job duties was provided when the items were returned. A letter drafted May 9, 2025 reflected the same (ATTACHMENT I – ACCEPTANCE OF RESIGNATION).

Contrary to Complainant's claims, Complainant never returned to work after she was issued her return to work letter. Complainant was going to be terminated for not returning to work for approximately a month after being informed to return to work. She subsequently turned in her keys without an explanation, which was reasonably interpreted as a resignation by OSH. There is no evidence that would support any finding that any of the actions taken by OSH against Complainant were discriminatory or retaliatory in nature.

### C. Conclusion

As shown above, neither KDADS nor OSH engaged in, or permitted, any discriminatory or retaliatory action against Complainant. After OSH received complaints of unprofessional behavior and sexual harassment, OSH promptly investigated these matters, which were unsubstantiated. Complainant, despite being given ample opportunity during her investigatory interview or afterward, never asserted to the investigator, OSH HR, her supervisor, or OSH Leadership that she was ever called a "black monkey", or that any coworker would allegedly yell at Complainant, call her names, or make fun of her accent. In addition, Complainant never notified the investigator, OSH HR, her supervisor, or OSH Leadership that this coworker would allegedly follow her around, block Complainant from doing her job, and use people to help prevent Complainant from working, or that Complainant ever had to hide in the bathroom. As OSH HR, her supervisor, OSH Management, or Investigators were never notified of this alleged conduct, it prevented OSH from promptly investigating these claims and taking corrective action against these claims, if substantiated.

Complainant was later placed on paid administrative leave for allegedly engaging in reckless driving and possibly chanting harm against other individuals. However, after the investigation was concluded and solely substantiated the claim of reckless driving, she was promptly returned back to work, with a Letter of Reprimand prepared for in-person delivery upon her return. Despite being returned to work, Complainant never returned to work. After approximately a month of Complainant calling in and not returning to work, OSH exercised its right to terminate Complainant's employment by issuing a "no cause" termination letter, a condition expressly stated in her contract with OSH. Complainant subsequently resigned her employment by turning in her keys without explanation, thereby effectively ending by resignation her employment with OSH on May 9, 2025.

At no point was OSH aware, or should have been aware, of any of the conduct alleged by Complainant in her complaint. Furthermore, none of the actions taken by KDADS were done for a retaliatory or discriminatory purpose. Therefore, OSH and KDADS reassert the request that the KHRC/EEOC dismiss in its entirety, the complaint brought by Complainant.

### D. REQUESTED DOCUMENTS

The following documents are attached hereto in support of the Response:

**Attachment 1.** Lucyanne Okwomi, Position Description
**Attachment 2.** Lucyanne Okwomi, Contract Agreement
████████  ███████████████
**Attachment 4.** Hospital Policy 3.1.D "Complaints of Discrimination and Harassment"

**Attachment 5.**   Hospital Policy 3.1 "Discrimination & Harassment"
**Attachment 6.**   Hospital Policy 3.1.B "Equal Opportunity & Affirmative Action"
**Attachment 7.**   KDADS Investigation 2025-21
**Attachment 8.**   Return to Work Letter, dated 3/28/2025
**Attachment 9.**   No Cause Termination Letter, dated 4/29/2025
**Attachment 10.** Acceptance of Resignation Letter, dated 5/9/2025

Please, let me know if you have questions or require additional documents.

Respectfully,

████████████████████████
██████████
Senior Counsel
Kansas Department for Aging and Disability Services (KDADS)
New England Building, 503 S Kansas Ave, Topeka, KS 66603
T: 785.368.7230 | F: 785.296.0767 | E: halston.rucker@ks.gov

# Exhibit "L"

**EEOC (Inquiry) Number: 563-2025-01633**

## INQUIRY INFORMATION

### INQUIRY OFFICE

**Receiving:** Kansas City Area Office

**Accountable:** Kansas City Area Office

### POTENTIAL CHARGING PARTY

**Name:** Lucyanne M. Okwomi

**Address:** ███ ██ █████████ █

OVERLAND PARK, KS 66212

**Year of Birth:**

**Email Address:** ███████████

**Phone Number:** ██████████

### POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** Female

**Disabled?**

**Are you Hispanic or Latino?**

**Ethnicity:**

**National Origin:**

### RESPONDENT/Employer

**Organization Name:** Osawatomie state hospital

**Type of Employer:** State Government that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Primary Address:** 500 STATE HOSPITAL DR

OSAWATOMIE, KS 66064

**County:** Miami

**Phone Number:** 913-755-7000

**Work Address:** 500 STATE HOSPITAL DR

OSAWATOMIE, KS 66064

**Remote Work:** No

### RESPONDENT CONTACT

**Name:** Tyler  B██████

**Email Address:** ███████████████

**Phone Number:** 913-755-7000

**Title:** Human Resources Director or Owner

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 02/01/2025

**Reason for Complaint:** Race, Age - I am 40 years of age or older, National origin and/or ethnicity, Color, Retaliation - I complained to my employer about job discrimination

**Pay Disparity:**

**Location of Incident:** Kansas

**Submission (initial inquiry) Date** 02/01/2025

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:**

**Charge Number:** 563-2025-01633

**Claim previously filed as complaint with another Agency?** No

**Agency Name:**

**Approximate Date of Filing:**

**Nature of Complaint:**

## ADVERSE ACTION(s)

I am going through continuous harassment, sexual hatred, intimidation, unconducive work environment due to my race and national origin.

This attacks are perpetrated by Jennifer Ca████

## APPOINTMENT

**Appointment Date and time:**

**Interview Type:**

## APPROXIMATE DEADLINE FOR FILING A CHARGE: 11/27/2025

### Supplemental Information

**What Reason(s) were you given for the action taken against you?**


**Was anyone in a similar situation treated the same, better, or worse than you?**


**Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.**


**Please tell us any other information about your experience.**